FILED
 2016 Nov-10  PM 03:50
 U.S. DISTRICT COURT
     N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **TIMOTHY J. PARKER,** ) | |
| ) | |
| Petitioner, ) | |
| ) | **Case No. 2:15-CV-8004-SLB** |
| vs. ) | **Crim. Case No. 2:09-CR-0500-SLB-HGD** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

This case is presently pending before the court on defendant/petitioner Timothy J. Parker's (1) Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [hereinafter Motion to Vacate], (doc. 1; crim. doc. 27);[1] (2) Motion for Reduction of Sentence Pursuant to 18 U.S.C. §3582(c)(2), Amendment 750, and United States v. Freeman, (crim. doc. 26); and (3) Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(2), Amendment 782, All Drugs Minus Two, (crim. doc. 30). Parker, who pleaded guilty to two counts of distributing a substance or mixture containing a controlled substance, contends his sentence should be reduced pursuant to subsequent amendments to the Sentencing Guidelines and pursuant to the Fair Sentencing Act, that he was entrapped by the Government into selling crack in order to be subject to a higher

---

[1]Citations to documents in the court's record in petitioner's Motion to Vacate appear as "(Doc. __)." Citations to documents in the court's record in the criminal proceedings against petitioner, Case No. 2:09-CR-0500-SLB-HGD, appear as "(Crim. Doc. __)." Citations to page numbers refer to the page numbers assigned to the document by the court's CM/ECF electronic filing system.

sentence, and that his counsel was ineffective by failing to argue his entrapment defense properly at sentencing. For the reasons set forth below, the court finds that Parker's Motion to Vacate, (doc. 1; crim. doc. 27), is due to be denied as untimely filed, and his Motions for Reduction of Sentence Pursuant to § 3582(c)(2), (crim. docs. 26 and 30), are due to be denied.

## I. BACKGROUND

On December 1, 2009, Parker was charged with two counts of distributing 50 grams or more of "a mixture and substance containing a detectable amount of cocaine base, also known as 'crack' cocaine, a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)." (Crim. doc. 5.) The Government filed an Information Relating to Previous Conviction, pursuant to 21 U.S.C. § 851,[2] in which it stated:

> [D]efendant committed the crimes charged in Counts One and Two of the Indictment in this case after having been convicted and sentenced on or about December 4, 2001, of Trafficking in Cannabis and Trafficking Cocaine, in case numbers CC-00-3196 and CC-00-3197, respectively, in the Circuit Court of Jefferson County, Alabama; and after having been convicted and sentenced

---

[2]Section 851(a)(1) states:

No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

21 U.S.C. § 851(a)(1).

on or about January 9, 2003, of Possession of Cocaine, in case number CC-02-5348, in the Circuit Court of Jefferson County, Alabama; and after having been convicted and sentenced on or about January 12, 2009, of Possession of Marijuana, First Degree, in case number CR-08-3598, in the Circuit Court of Jefferson County, Alabama, and that said convictions constitute "two or more prior convictions for a felony drug offense" for the purpose of an enhanced penalty pursuant to Title 21, United States Code, Sections 841(b)(1)(A) and Title 21, United States Code, Section 851(a).

(Doc. 9.) Parker did not object to or otherwise challenge the fact of his prior convictions.

Parker agreed to plead guilty to both Counts in the Indictment, and the Government agreed, inter alia, to recommend that Parker be sentenced to a term of imprisonment "consistent with the low end of the advisory United States Sentencing Guideline range that is determined by the court on the date that the sentence is pronounced." (Crim. doc. 10 at 1, 7-8.) As part of his Plea Agreement, Parker stipulated the following facts were "substantially correct:"

> On August 20, 2009, DEA Special Agent Donald Bennett utilized a Confidential Source (CS) to purchase two (2) ounces of cocaine base from Timothy Jermaine PARKER at the Pilot Travel Center, 901 Bankhead Highway West, Birmingham, Alabama. The CS was directed by SA Bennett to call PARKER and arrange the purchase of approximately two (2) ounces of cocaine base. PARKER agreed and stated the price would be $1,900.00 dollars. The CS and CS'[s] vehicle were searched for illegal contraband with negative results. The CS was provided with $1,900.00 dollars for the purchase of the two (2) ounces of cocaine base from PARKER and was followed to the Pilot Travel Center. PARKER arrived at the Pilot Travel Center in a black 1997 Chevrolet Tahoe and met with the CS. PARKER exited his vehicle and entered the CS'[s] vehicle where he handed the CS approximately two (2) ounces of cocaine base. CS in exchange provided PARKER with the $1,900.00 dollars for the cocaine base. PARKER soon after receiving the $1,900.00 dollars then exited the CS vehicle and entered back into his vehicle and left the Pilot Travel Center parking lot. SA Bennett then met with the CS

at a predetermined location where the CS relinquished custody of cocaine base to SA Bennett. The CS and CS' vehicle were searched again for illegal contraband with negative results. SA Bennett conducted a field test of the cocaine base that tested positive for cocaine. The cocaine was then transported to the DEA-Birmingham District Office where it was processed as DEA evidence and submitted to South Central Laboratory for analysis. Laboratory analysis confirmed that this substance was 55.5 grams of a mixture and substance containing a detectable amount of cocaine base.

On November 6, 2009, SA Donald Bennett utilized a [CS] to purchase three (3) ounces of cocaine base from Timothy Jermaine PARKER at the Pilot Travel Center, 901 Bankhead Highway West, Birmingham, Alabama. On this date, the CS was directed by SA Bennett to make a recorded telephone call to PARKER and to arrange the purchase of approximately three (3) ounces of cocaine base. PARKER agreed and stated the price would be $2,775.00 dollars, previously on November 5, 2009 to the CS during a recorded telephone call. The CS and CS'[s] vehicle were searched for illegal contraband with negative results. The CS was followed to the Pilot Travel Center where he/she agreed to meet PARKER. PARKER arrived at the Pilot Travel Center in a black 1997 Chevrolet Tahoe, and met with the CS. PARKER exited his vehicle and entered the CS'[s] vehicle where he handed the CS approximately three (3) ounces of cocaine base at which time Law Enforcement Officers arrested PARKER. The CS was then taken to a predetermined location where the CS and CS'[s] vehicle were searched again for illegal contraband with negative results. A field test was conducted on the suspected cocaine base and showed a positive result for cocaine. The cocaine was then transported to the DEA-Birmingham District Office where it was processed as DEA evidence and submitted to South Central Laboratory for analysis. Laboratory analysis confirmed that this substance was 82.2 grams of a mixture and substance containing a detectable amount of cocaine base.

(*Id*. at 2-5.)

The court was notified that Parker intended to change his plea from "not guilty" to "guilty." On January 21, 2010, the court held a change-of-plea hearing at which Parker again admitted to distributing crack cocaine to the confidential source on two separate occasions:

THE COURT: Mr. Parker, I want you to listen carefully to what the Assistant U.S. Attorney is going to say. He is now going to outline for you

and for me briefly certain of the facts he would expect the government to prove should this case proceed to trial.

If, while he is speaking, he says anything that is not true or that you do not believe the government can prove, I want you to interrupt him and let me know.

Do you understand?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Mr. Weil.

[AUSA] MR. WEIL:  Your Honor, this case involves two different transactions.  One was a buy/walk of cocaine base, and the second one was a buy/bust of cocaine base.

More specifically, on August 20th, this defendant met with a confidential source who was working with the DEA who had agreed to sell two ounces of cocaine base to the confidential source for the price of $1,900.  They agreed to meet at the Pilot Travel Center . . . .

And after making several phone calls arranging the deal, the confidential source was followed to the area where the deal was going to happen.  He was under constant surveillance.  The officer saw the defendant get out of his own vehicle at the Pilot Travel Center, get into the confidential source's vehicle where the exchange took place.

The defendant did hand approximately two ounces of cocaine base to the confidential source, and the confidential source provided the defendant with $1,900 that had been provided to him by the DEA.  They did not arrest him on that date.  That's what we call a buy/walk.

They did follow the confidential source back to [a] predetermined location where they took custody of the cocaine base.  They sent this suspected cocaine base to the crime lab.  And it did, in fact, test positive for a detectable amount of cocaine base in the amount of 55.5 grams.  As I said, he was not arrested on that date.

They decided to do another transaction with Mr. Parker on November 6th, 2009.  It's almost the exact same scenario.  On this occasion, they again

5

met at the same Pilot Travel Center . . . .  This time the confidential source was going to buy three ounces of cocaine base from the defendant for $2,775.

Again, phone calls were made setting up the deal.  Again, the confidential source was searched before the deal took place, and they followed him to the Pilot Travel Center where they saw the defendant get out of his vehicle, get into the confidential source's vehicle and provide him with the three ounces of crack cocaine.

At that time, the police officers did move in and arrest the defendant and took him into custody.  He's been in custody ever since, Your Honor.

The substance was sent to the crime lab, and again it did test positive for cocaine base, and this time the amount was 82.2 grams of cocaine base.

THE COURT:  Mr. Parker, you've heard the Assistant U.S. Attorney outline briefly certain of the facts he would expect the government to prove should this case proceed to trial.  Are those facts substantially correct?

THE DEFENDANT:  Yes, ma'am.

***THE COURT:  Do you agree that on both occasions that are charged in the indictment, that being August 20th, 2009, and November 6th, 2009, you distributed to another person more than 50 grams of cocaine base on each occasion?***

***THE DEFENDANT:  Yes, ma'am.***

THE COURT:  Mr. Parker, you're not required to enter a plea of guilty, and you are free at this time to withdraw your plea of guilty and re-enter a not guilty plea.

Have you heard anything here today that causes you to want to reconsider your decision to enter a plea of guilty to Counts One and Two?

THE DEFENDANT:  No, ma'am.

THE COURT:  Do you still desire to enter your plea of guilty to those counts?

THE DEFENDANT:  Yes, ma'am.

> THE COURT: The court finds your plea of guilty is freely and voluntarily entered, and the requisite factual basis for your plea exists. The plea of guilty is accepted by the court.

(Crim. Doc. 28 at 15-18 [emphasis added].)

Based on changes in the law and the Sentencing Guidelines following acceptance of Parker's guilty plea, but before sentencing, Parker was sentenced pursuant to 21 U.S.C. § 841(b)(1)(B), not § 841 (b)(1)(A). Prior to sentencing the U.S. Probation Office prepared a Presentence Investigation Report for the court, which was provided to the parties. According to this report, the Base Offense Level for Parker's violations of § 841(a)(1) was 28, with adjustments for acceptance of responsibility, the total offense level was 25. However, based on his prior convictions, Parker was subject to sentencing as a career offender within the meaning of U.S.S.G. § 4B1.1(a).

The maximum statutory penalty under § 841(b)(1)(B) is life; therefore, Parker's career-offender-enhanced offense level was 37. With a 3-level reduction for acceptance of responsibility, his total career-offender-enhanced offense level was 34. Parker's criminal history category was VI. Thus, his Guideline range for imprisonment was 262 to 327 months.

On October 14, 2011, the court imposed a custodial sentence of 262 months.[3] (Crim. doc. 22.) Parker did not appeal.

---

[3]Subsequently, Parker's custodial sentence was reduced for reasons unrelated to the Sentencing Guidelines or the issues raised in the pending motions.

## II.  MOTION TO VACATE

On March 9, 2015, Parker filed a Motion to Vacate.  (Doc. 1; crim. doc. 27.)  The Judgment in Parker's case was entered on October 14, 2011.  (Crim. doc. 22.)  The Government contends that Parker's Motion to Vacate is due to be "summarily dismissed as untimely."  (Doc. 4 at 2.)  The court agrees.

"A § 2255 motion ordinarily is subject to a one-year limitations period." *Long v. United States*, 626 F.3d 1167, 1169 (11th Cir. 2010)(citing 28 U.S.C. § 2255(f)).  In fact, all habeas petitions under § 2255 are required to be filed within one year, although the day the limitations period begins to run may vary based on the petitioner's circumstances. 28 U.S.C. § 2255(f).  Section 2255(f) sets forth four alternative starting dates:

> (f)  A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –
>
> (1)  the date on which the judgment of conviction becomes final;
>
> (2)  the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4)  the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id*.

Because Parker did not file a direct appeal of his judgment of conviction, the judgment of conviction became final on October 28, 2011.[4] Thus, his Motion to Vacate, filed on March 9, 2015, was filed more than one year after his judgment of conviction became final. Therefore, his habeas petition was not timely filed pursuant to § 2255(f)(1).

In his Motion to Vacate, Parker contends that his § 2255 claim is timely filed based on the Supreme Court's decision in *Dorsey v. United States,* 132 S. Ct. 2321 (2012), "making the FSA [Fair Sentencing Act] applicable to those offenders whose crimes preceded the FSA's enactment but whose sentences were imposed after the FSA's enactment[.]" (Doc. 1

---

[4]The Eleventh Circuit has held:

> Section 2255(f) does not define "judgment of conviction" or "final." Nonetheless, we have concluded that when a defendant does not appeal his conviction or sentence, the judgment of conviction becomes final when the time for seeking that review expires. *Mederos v. United States,* 218 F.3d 1252, 1253 (11th Cir. 2000)(noting that when no direct appeal was taken from the original judgment of conviction, the judgment of conviction became final when the time for filing a direct appeal expired); *Akins v. United States,* 204 F.3d 1086, 1089 n.1 (11th Cir. 2000)("A conviction ordinarily becomes final when the opportunity for direct appeal of the judgment of conviction has been exhausted."); *cf. Clay v. United States,* 537 U.S. 522, 527, 123 S. Ct. 1072, 1076, 155 L. Ed. 2d 88 (2003)("Finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires.").
>
> At the time of Murphy's sentencing, a criminal defendant had ten days to file an appeal. Fed. R. App. P. 4(b)(1)(A)(2005)(amended 2009). [Footnote] . . .
>
> [Footnote:] Under the current rules, a defendant has fourteen days to appeal. See Fed. R. App. P. (4)(b)(1)(A) (2009).

*Murphy v. United States*, 634 F.3d 1303, 1307 and n.11 (11th Cir. 2011).

at 16; crim. doc. 27 at 16.)  Assuming that the *Dorsey* Court created a new right made "retroactively applicable to cases on collateral review," *see* 28 U.S.C. § 2255(f)(3), Parker did not file his habeas petition until more than one year after *Dorsey* was decided.  As set forth above, the habeas statute of limitation may run from "the date on which the right asserted was initially recognized by the Supreme Court." (*Id*.)  The Supreme Court decided *Dorsey* on June 21, 2012; Parker filed the instant Motion to Vacate on March 9, 2015, which is more than one year after *Dorsey* was decided.  Therefore, his petition was not timely filed pursuant to § 2255(f)(3).

Parker does not contend that his Motion was timely filed pursuant to § 2255 (f)(2)(government-created impediment) or § 2255(f)(4)(newly-discovered evidence).

In his reply, Parker argues that his Motion to Vacate should not be dismissed as untimely filed because (1) "a § 2255 motion [may be] amended if the new claims relate back to the common core of operative facts of the previous claim pursuant to Rule 15(c) of the Federal Rules of Civil Procedure." (doc. 5 at 1-2); and (2) his sentence is the result of a "miscarriage of justice" caused by the alleged sentence entrapment and his ineffective counsel, (*id*. at 2-3).

Rule 15 of Federal Rules of Civil Procedure concerns amending pleadings in civil cases.  Subsection (c)(1)(B) addresses when such an amendment "relates back" to the date of the original filing; it states:

> An amendment to a pleading relates back to **the date of the original pleading** when:

>   . . .
>
>   (B)  the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the ***original pleading*** . . . .

Fed. R. Civ. P. 15(c)(1)(B)(emphasis added).  Parker's Motion to Vacate is the "original pleading."  "The 'original pleading' to which Rule 15 refers is the complaint in an ordinary civil case, and the petition in a habeas proceeding."  *Mayle v. Felix*, 545 U.S. 644, 655 (2005).  Therefore, his habeas petition, the "original pleading" cannot relate back.  Rule 15(c) does not provide Parker relief from the limitation period for filing the habeas petition pursuant to § 2255(f).

Parker also argues that he is entitled to habeas relief, despite his failure to file a timely § 2255 petition, so as to prevent a miscarriage of justice.  He argues:

>   . . . [I]t remains unclear how a miscarriage of justice would be allowed to stand concerning the erroneous behavior displayed by the D.E.A. agents assigned to this case.  The Government argues in its reply that the issue of sentence entrapment was "vigorously argued" by counsel representing this defendant at the sentencing hearing held on Oct. 10th 2011.  This is broad over-exaggeration of the truth.  The attorney on record . . . made mention of a "possible sentence entrapment I think" but never argued the details of what took place during the events of the investigation conducted by the D.E.A. . . . even after this Honorable Court revealed her distaste for agents conducting themselves in this manner.  This obviously renders counsel ineffective for this defendant.
>
>   There is recorded audio of phone conversations (obtained by D.E.A.) of the Confidential Source (CS) and a third person, using this defendant[']s cell phone, negotiating.  The CS wanted the third person to modify his powdered cocaine into crack cocaine.  The (CS) was instructed by agents via several back and forth phone calls to get the dealer to transform the powder cocaine into crack.  This purpose is to manipulate a defendant[']s sentence of conviction towards a lengthy incarceration versus a conviction of powdered

> cocaine case which carries much less incarceration time, hence, sentence entrapment and/or erroneous behavior performed by D.E.A.
>
> The Government was also correct in the finding that Petitioner Parker was serving a Community Corrections sentence of 15 months at the time of this investigation, which resulted in an enhancement of his sentence. Whether a defendant is on probation, parole, community corrections, etc.; to ignore the behavior of the agents involved in this matter would be turning a blind eye to injustice, resulting in a miscarriage of justice.

(Doc. 5 at 2-3.)

"To invoke the miscarriage of justice exception to [§ 2255(f)'s] statute of limitations, . . . a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1935 (2013)(quoting *Schlup v. Delo*, 513 U.S. 296, 327 (1995)); *see also McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011). In other words, to avoid the statute-of-limitations bar based on a miscarriage-of-justice exception, Parker must prove his "actual innocence" of the crimes of conviction – two counts of distributing more than 50 grams of crack, a substance containing cocaine base.

As set forth above, Parker admitted his guilt to two counts of distribution of more than 50 grams of crack cocaine.[5] He has offered no new evidence to show that he is "actually innocent" of these charges. What he alleges is that he was entrapped into selling crack, as

---

[5]Statements made by Parker under oath, which admit his guilt to crimes of conviction, "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Therefore, "when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988)(citing *United States v. Hauring*, 790 F.2d 1570, 1571 (11th Cir.1986)).

opposed to powder cocaine, based on the DEA agent's instructions to the confidential source to ask Parker to him sell crack.[6]

These allegations – that the confidential source, at the agent's instructions, insisted on purchasing crack, rather than powder, cocaine, for the purpose of having Parker commit a crime with a greater punishment – do not show that "it is more likely than not that no reasonable juror would have convicted [Parker] in the light of . . . evidence" of sentencing entrapment. *See Schlup*, 513 U.S. at 327. Indeed, Parker testified at sentencing that he had been "very reluctant" to sell crack to the confidential source, but he "did it anyway against [his] better judgment." (Crim. doc. 29 at 11.) Based on this admission, together with his admission, under oath, at the plea colloquy that he had "distributed to another person more than 50 grams of cocaine base on [two] occasion[s], (crim. doc. 28 at 17), the court finds Parker cannot establish his actual innocence of the crimes of conviction.

---

[6]The court notes that Parker waived any defense based on entrapment by pleading guilty.

> Defenses, including the defense of entrapment, may not be raised after the defendant pleads guilty and swears under oath that he committed the crime with which he is charged. *See United States v. Baxley*, 402 F. App'x 461, 462 (11th Cir. 2010)(holding defendant waived entrapment defense by entering valid guilty plea); *United States v. Golden*, 284 F. App'x 646, 650 (11th Cir. 2008)(holding defendant waived right to appeal the district court's ruling on an entrapment defense by pleading guilty).

*Garcia-Rodriguez v. United States*, Nos. 4:14-CV-174, 4:13-CR-116-1; 2015 WL 6750756, *3 (S.D. Ga. Oct. 6, 2015).

Therefore, because Parker has admitted his guilt and has presented nothing to show he is actually innocent of the crimes of conviction, the court finds no exception to the one-year time limit for filing a § 2255 petition is warranted. The Motion to Vacate, (doc. 1; crim. doc. 27), will be denied and his habeas petition will be dismissed.

### III.  MOTIONS TO REDUCE SENTENCE

Parker has filed two motions, pursuant to 18 U.S.C. § 3582(c)(2), seeking to reduce his sentence based on retroactive changes to the Sentencing Guidelines, specifically Amendments 750 and 782. He "bears the burden of demonstrating that a retroactive Amendment has actually lowered his guideline range." *United States v. Tellis*, 748 F.3d 1305, 1308 (11th Cir. 2014)(citing *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013)). Section § 3582(c)(2) states:

> The court may not modify a term of imprisonment once it has been imposed except that –
>
> . . .
>
> (2)  in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o),[7]

---

[7]Section 994(*o*) states:

The Commission periodically shall review and revise, in consideration of comments and data coming to its attention, the guidelines promulgated pursuant to the provisions of this section. In fulfilling its duties and in exercising its powers, the Commission shall consult with authorities on, and individual and institutional representatives of, various aspects of the Federal criminal justice system. The United States Probation System, the Bureau of Prisons, the Judicial Conference of the United States, the Criminal Division

14

> upon motion of the defendant . . . , the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2)(footnote added). In its policy statements, the Sentencing Commission has stated, "A reduction in the defendant's term of imprisonment is not consistent with this policy statement[,] and therefore is not authorized under 18 U.S.C. 3582(c)(2)[,] if – . . . An amendment listed in subsection (d)[8] does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. 1B1.10 (a)(2)(B).

According to the Sentencing Commission's policy statement:

> In determining whether, and to what extent, a reduction in the defendant's term of imprisonment under 18 U.S.C. 3582(c)(2) and this policy statement is warranted, the court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (d) had been in effect at the time the defendant was sentenced. In making such determination, the court shall substitute only the

---

> of the United States Department of Justice, and a representative of the Federal Public Defenders shall submit to the Commission any observations, comments, or questions pertinent to the work of the Commission whenever they believe such communication would be useful, and shall, at least annually, submit to the Commission a written report commenting on the operation of the Commission's guidelines, suggesting changes in the guidelines that appear to be warranted, and otherwise assessing the Commission's work.

28 U.S.C. § 994(*o*).

[8]Both Amendments on which Parker relies, Amendments 750 and 782, are included in subsection (d) of § 1B1.10, although only "parts A and C" of Amendment 750 are included in subsection (d) and a "court shall not order a reduced term of imprisonment based on Amendment 782 unless the effective date of the court's order is November 1, 2015, or later." U.S.S.G. 1B1.10 (d), (e)(1).

>amendments listed in subsection (d) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected.

*Id*. (b)(1). Thus, for this court to be authorized to reduce Parker's sentence pursuant to § 3582(c)(2), it must first determine whether Amendments 750 and 782 have the effect of lowering his Sentencing Guidelines range. *United States v. Bravo*, 203 F.3d 778, 780 (11th Cir. 2000)("In undertaking this first step, only the amended guideline is changed. All other guideline application decisions made during the original sentencing remain intact.")(citing *United States v. Vautier*, 144 F.3d 756, 760 (11th Cir. 1998)(citing U.S.S.G. § 1B1.10 (b), comment n.2))

Applying the Sentencing Guidelines currently in effect, considering the changes in Chapter 2 (Offense Conduct) calculations in light of Amendments 750 and 782, the Base Offense Level is 26; prior to the Amendments, the Base Offense Level was 28. The Amendments did not affect any other finding of the PSR; specifically, the Amendments did not affect the calculation of Parker's career-offender enhanced sentence.

The maximum statutory penalty under § 841(b)(1)(B) is life; therefore, Parker's Guidelines Offense Level as a career offender is, and at the time of sentencing was, 37. U.S.S.G. § 4B1.1 (b)(1). With a 3-level reduction for acceptance of responsibility, his offense level is, and at the time of sentencing was, 34. As a career offender, Parker's criminal history category is, and at the time of sentencing was, VI. *See id*. (b). Therefore, the Sentencing Guidelines range for imprisonment is, and at the time of sentencing was, 262 to 327 months. *See* U.S.S.G. Ch. 5, Pt. A.

Neither Amendment 750 nor Amendment 782 changed the calculation of Parker's Sentencing Guidelines range due to his status as a career offender. Therefore, the court has no authority to reduce Parker's sentence pursuant to § 3582(c)(2). Parker's Motions for Reduction of Sentence, (crim. docs. 26 and 30), will be denied.

## CONCLUSION

Based on the foregoing, the Motion to Vacate filed by petitioner Timothy J. Parker, (doc. 1; crim. doc. 27), is due to be denied, and the Motions for Reduction of Sentence, (crim. docs. 26 and 30), are due to be denied. An Order denying the Motions and dismissing Parker's habeas petition will be entered contemporaneously with this Memorandum Opinion.

## CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing § 2255 Proceedings, provides, "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The applicant for § 2255 relief "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). And, the "certificate of appealability may issue . . . *only* if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2)(emphasis added). To make a substantial showing of the denial of a constitutional right, the applicant must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner

or that the issues presented were adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003)(citations and internal quotations omitted).

Parker's habeas petition is time barred. Reasonable jurists could not disagree. Also, Parker has not demonstrated that the issue he raises is reasonably debatable and/or deserves encouragement to proceed further. Therefore, issuance of a certificate of appealability is not warranted in this case.

### NOTICE CONCERNING APPEAL OF § 3582(c)(2) MOTIONS

A § 3582(c)(2) motion is a continuation of the criminal proceeding; therefore, a notice of appeal must be filed within 14 days from the entry of this Order. Fed. R. App. P. 4(b)(1)(A)(i). Parker was represented by appointed counsel; therefore, he is not required to file a new application to proceed in forma pauperis on appeal from the denial of his Motions for Reduction of Sentence, filed pursuant to § 3582(c)(2).

Done this 10th day of November, 2016.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE